UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re RONALD BIFANI,

    Debtor.
_____/

ARLENE M. LAMARCA,

    Appellant,

v.

    Case No.: 8:13-cv-02197-JDW

    Bankr. Case No.: 8:12-bk-00562-MGW

SHARI STREIT JANSEN,
*Chapter 7 Trustee*,

    Appellee.
_____/

## ORDER

**BEFORE THE COURT** is Appellant's Verified Emergency Motion to Stay Sale of Property (Dkt. 13), to which Appellee filed a response in opposition (Dkt. 15). Appellant seeks a stay of the sale of real property (the "Bald Eagle Road" property), scheduled to close on January 24, 2014.

The Bankruptcy Court succinctly summarized this case in its Order granting Appellee summary judgment on her fraudulent transfer claims brought against Appellant:

> The undisputed facts of this case fit the classic pattern of most fraudulent transfer cases. The Debtor was engaged in litigation with his former business partner for nearly a decade, and just when that lawsuit appears to be heading toward a judgment against him, the Debtor transfers nearly all of his property to a close friend he had been living with for years. His friend then sells some of the property the Debtor transferred to her and invests it in homestead property in Florida. On those undisputed facts, the Trustee is entitled to partial summary judgment as a matter of law on her fraudulent transfer and equitable lien claims.

(Dkt. 1-1 at 8). A thorough review of Appellant's motion, her merits brief, and the record confirms

1

this characterization to be accurate. The Bankruptcy Court's decision was not clearly erroneous, and Appellant is not likely to prevail on her appeal. The motion (Dkt. 13) is therefore DENIED.

## I. INTRODUCTION

In January 2012, Ronald Bifani filed a Chapter 7 bankruptcy petition for relief. The Bankruptcy Court appointed Appellee Shari Streit Jansen as Trustee for Bifani's bankruptcy estate. The Trustee instituted an adversary proceeding against Appellant Arlene LaMarca, as memorialized in the operative Second Amended Complaint (Dkt. 1-6). The adversary proceeding sought to avoid certain transfers of real property as fraudulent (Counts I-VI) and to impose an equitable lien on LaMarca's house she shares with Bifani in Sarasota, Florida (Count VII).

After discovery, the Trustee moved for summary judgment on the Second Amended Complaint (Dkt. 1-13), to which LaMarca responded in opposition (Dkt. 1-19). The Bankruptcy Court convened a hearing on the motion (*see* Dkt. 1-23), and ultimately granted it on Counts I, IV, and VII (Dkt. 1-1).[1] The remainder of the motion was denied as moot (*id.*).

Pertinent to the instant motion, Count IV sought to avoid the transfer of the "Bald Eagle Road" property as a fraudulent transfer. The transfer of the Bald Eagle Road property from Bifani to LaMarca was voided when the Trustee prevailed on Count IV, and the property is therefore part of the Estate. In its Order granting summary judgment, the Bankruptcy Court found no genuine issues of material fact with regard to the existence of "badges of fraud," and concluded that the badges combined to evidence actual intent on the part of Bifani to hinder, delay, or defraud his creditor (*id.*). Specifically, the Bankruptcy Court found that Bifani transferred property to a

---

[1] Count I sought to avoid the fraudulent transfer of the "Golden Eagle Road Property" on the basis of LaMarca's "actual intent to hinder, delay or defraud creditors of the Debtor"; Count IV sought to avoid the fraudulent transfer of the "Bald Eagle Road Property," also on the basis of actual intent to hinder, delay, or defraud; and Count VII sought to impose an equitable lien on LaMarca's house because she allegedly purchased the house with proceeds garnered from the sale of Golden Eagle Road Property, which had been fraudulently transferred.

2

functional insider at the time a lawsuit was pending against him, did not receive reasonable equivalent value in exchange for the transfers, and maintained control of the property after it was transferred "at least in some respects" (Dkt. 1-1 at 5-6, 7).[2]

LaMarca appealed the Order (*see* Dkt. 1-2). On appeal, LaMarca argues that the Bankruptcy Court erred by imposing an equitable lien on LaMarca's homestead and by granting summary judgment on a finding of "actual fraud" when material facts remained in dispute (Dkt. 8 at iii). The appeal has been fully briefed and is pending.

On November 27, 2013, after entry of the summary judgment order and after LaMarca filed her appeal, the Trustee applied to the Bankruptcy Court for authority to sell the Bald Eagle Road property (also known as "Lot 2") for $225,000.00 (Dkt. 15-1). LaMarca objected to the sale (*see* Dkt. 15-2 at 1), but the Bankruptcy Court overruled her Objection and on December 18, 2013, granted the Trustee's motion to sell the property (Dkt. 15-2). LaMarca took no further action until January 15, 2014, when she filed the instant motion to stay the sale (Dkt. 13).

## II. STANDARD

Federal Rule of Bankruptcy Procedure 8005 provides that a motion for stay of an order or judgment "must ordinarily be presented to the bankruptcy judge in the first instance." A motion to stay may also be made to the district court, but it must "show why the relief, modification, or termination was not obtained from the bankruptcy judge." Fed. R. Bankr. P. 8005; *see In re Kahihikolo*, 807 F.2d 1540, 1542 (11th Cir. 1987) ("Rule 8005 allows for such a motion to be made to the district court upon a showing of why the relief was not obtained from the bankruptcy court.").

"A motion for a stay pending appeal under Rule 8005 is an extraordinary remedy and

---

[2] The Bankruptcy Court also imposed an equitable lien on the Sarasota home because it had been purchased with funds obtained by selling the Golden Eagle Road property after it had been fraudulently transferred to LaMarca by Bifani.

3

requires a substantial showing on the part of the movant." *In re F.G. Metals, Inc.*, 390 B.R. 467, 471 (Bankr. M.D. Fla. 2008). To obtain a stay, the movant must demonstrate: (1) that the movant is likely to prevail on the merits of her appeal;[3] (2) that the movant will suffer irreparable injury if a stay or other injunctive relief is not granted; (3) that other parties will suffer no substantial harm if a stay or other injunctive relief is granted; and (4) in circumstances where the public interest is implicated, that the issuance of a stay will serve, rather than disserve, such public interest. *Tooke v. Sunshine Trust Mortgage Trust*, 149 B.R. 687, 689 (M.D. Fla. 1992).

### III. DISCUSSION

#### A. **LaMarca Has Not Shown Why a Stay Was Not Sought in Bankruptcy Court.**

There is no dispute that LaMarca did not first seek relief in the Bankruptcy Court, as required by Rule 8005. The motion is due to be denied on that basis alone. *See In re Zahn Farms*, 206 B.R. 643, 644 (B.A.P. 2d Cir. 1997) ("We are of the view that we may not consider the merits of the request for a stay pending appeal, because by their own admission, the Debtors have not complied with the duty imposed by [Rule] 8005 to present the request for stay first to the bankruptcy judge from whose order the appeal is taken."); *In re Taub*, 470 B.R. 273, 276 (E.D.N.Y. 2012) ("If the party improperly bypasses the bankruptcy court and seeks a stay first from the district court, the district court lacks the jurisdiction to hear the matter."); *In re 347 Linden LLC*, No. 11-CV-1990 (KAM), 2011 WL 2413526, at *4 (E.D.N.Y. June 8, 2011) (denying motion to stay foreclosure sale because motion should have been filed with bankruptcy court first).

---

[3]This criterion is generally considered to be the most important. In the comparable context of a motion to the Court of Appeals for the stay of a district court's decision, in order to find a likelihood of success on the merits, the district court's decision must be "clearly erroneous." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453-54 (11th Cir. 1986); *but see In re Stearns Bldg.*, 165 F.3d 28, at *3 (6th Cir. 1998) (requiring movant to demonstrate a "likelihood of reversal"). *See generally In re Cnty. Squire Associates of Carle Place, L.P.*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) (analogizing Rule 8005 to Federal Rule of Appellate Procedure 8). Absent being able to establish the first factor, a movant must establish that the three remaining factors, the "equities," weigh heavily in her favor. *Garcia-Mir*, 781 F.2d at 1454.

Nevertheless, Rule 8005 allows parties to seek a stay of a Bankruptcy Order in the District Court in certain circumstances, but only if the movants "show why the relief . . . was not obtained from the bankruptcy judge." Fed. R. Bankr. P. 8005. LaMarca argues that recourse in the District Court is appropriate because it is "impracticable" to seek relief before the Bankruptcy Court, citing Federal Rule of Civil Procedure 8(a)(2)(A). Rule 8 does not govern bankruptcy appeals, and even if it did, LaMarca has failed to demonstrate how seeking a stay from the Bankruptcy Court would have been impracticable. She argues that the "pending nature of the Property sale causes impracticality," but appellants faced with an impending property sale have regularly sought relief from the Bankruptcy Court. *See, e.g., Chetola Severn, LLC v. Bank of Granite*, No. 5:11-CV-82, 2011 WL 3156542, at *1 (W.D.N.C. July 26, 2011) (appellant applied for stay with bankruptcy court six days before sheriff sale of property, motion was denied, and appellant then moved for a stay in the district court).

LaMarca argues that "[t]here is simply not enough time before closing to obtain ruling at the bankruptcy court level, and then, if denied, appeal to this Court" (Dkt. 13 at 3). This argument is unavailing for two reasons. First, LaMarca created the urgency she now claims prevents an application to the Bankruptcy Court by waiting six weeks after the Trustee moved for approval of the sale and four weeks after the Court approved the sale to seek a stay. Her motion contains no explanation for this delay. Second, she offers no proof that there was insufficient time to apply to the Bankruptcy Court for a stay. The court considered an identical contention in *In re Taub*, rejecting the movant's "urgency" argument because the movant "waited nearly seven (7) weeks before seeking a stay of the orders at issue and now fails to provide this Court with any explanation–let alone a reasonable one–for this delay. The [movant] cannot rely on an 'urgency' argument because any emergency now existing is the product of her own doing." 470 B.R. at 276.

LaMarca also argues that seeking review in the Bankruptcy Court was impracticable because "the bankruptcy court has already indicated its reluctance to grant any stay relief [*sic*] to protect the Property pending appeal" (Dkt. 13 at 4). She cites nothing in the record supporting this contention, however, and a review of the Bankruptcy Court's actions, statements, and findings–including the transcript of the hearing on the Trustee's motion for summary judgment–reveals nothing that would support the contention.[4] *In re Taub* likewise rejected this "futility" argument. *See* 470 B.R. at 276-277.

Finally, LaMarca argues that she did not apply to the Bankruptcy Court first because it does not have jurisdiction to consider such a motion. This argument is contradicted by LaMarca's first three arguments and the language of Rule 8005. In any event, the argument is incorrect. *See Christian & Porter Aluminum Co. v. Titus*, 584 F.2d 326, 334 (9th Cir. 1978) ("[The] general rule that a properly filed notice of appeal deprives the trial court of jurisdiction to proceed further except by leave of the appellate court does not apply in bankruptcy proceedings."); *id.* ("The Trustee in a bankruptcy proceeding is expected and encouraged to proceed with administration of the estate after the entry and during the appeal of an order of adjudication.") (citing *Ga. Jewelers, Inc. v. Bulova Watch Co.*, 302 F.2d 362, 370 (5th Cir. 1962)).[5]

In sum, LaMarca has failed to comply with Rule 8005 by failing to show why relief was not

---

[4]Although she cites nothing in the record, her affidavit avers that "it was not practical to seek stay of relief before the bankruptcy judge who already indicated he would not grant me stay relief after previously hearing the same issues raised in the emergency motion" (Dkt. 13-5 ¶ 11). This bald, self-serving statement is not probative evidence of impracticability, and is certainly not a proper substitute for record evidence, considering the affidavit's failure to refer to any action or statement of the Bankruptcy Court that could be understood to indicate an unwillingness to consider a stay.

[5]In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

sought from the Bankruptcy Judge. On that basis alone, the motion is due to be denied.[6]

### B. LaMarca Fails to Demonstrate a Substantial Likelihood of Success or that Other Parties Will Suffer No Substantial Harm if a Stay Is Entered.

Even if LaMarca complied with Rule 8005 and the issue of a stay is properly presented, a stay would not be appropriate because LaMarca fails to satisfy two of the four required factors. As to the first factor, the most important one, LaMarca fails to demonstrate that the Bankruptcy Court's decision was clearly erroneous or that she has a substantial likelihood of prevailing on the merits of her appeal. She offers no evidentiary support or record citations establishing that genuine issues of material fact existed when the Bankruptcy Court granted the Trustee summary judgment. She also fails to demonstrate that the Trustee will not suffer substantial harm if the sale is stayed.

#### 1. *No Substantial Likelihood of Success.*

LaMarca addresses the likelihood of success on the merits of her appeal in a cursory manner (*see* Dkt. 13 at 6-7). Essentially, she argues that her affidavit attached to the motion to stay negates the badges of fraud found by the Bankruptcy Court, and that her status as a creditor of Bifani obviates any intent to defraud. Because she also appears to argue that she presented evidence before the Bankruptcy Court creating disputed issues of fact concerning intent, the first two arguments are examined, and then a plenary review of the merits of the appeal concerning the fraudulent transfer claims is undertaken. *See In re Optical Techs., Inc.*, 246 F.3d 1332, 1335 (11th Cir. 2001) (district court reviews bankruptcy court's entry of summary judgment *de novo*).

##### a. LaMarca's Affidavit.

LaMarca's affidavit filed in support of her motion to stay (*see* Dkt. 13-5) was not presented to the Bankruptcy Court during the summary judgment proceedings, and appears to have been

---

[6]LaMarca did not appeal the Bankruptcy Court's Order approving the sale of the property.

created solely for the purpose of this motion pursuant to Federal Rule of Bankruptcy Procedure 8011(d).[7] As the affidavit was not presented to the Bankruptcy Court, it has no bearing on whether the Bankruptcy Court erred in granting summary judgment to the Trustee or on determining LaMarca's likelihood of success on the appeal. In any event, it does not contain any facts bearing on the badges of fraud LaMarca contends are disputed.

        b.  <u>LaMarca's Status as a Creditor and *Jacksonville Bulls*.</u>

LaMarca next argues that her status as a creditor of the Estate negates any intent to defraud.[8] In support of that broad conclusion, she cites *Jacksonville Bulls Football, Ltd. v. Blatt*, 535 So. 2d 626 (Fla. 3d DCA 1988). *Jacksonville Bulls* does not stand for the proposition for which LaMarca cites it. Rather, it held:

> [I]f a judgment debtor disposes of assets for adequate cash, the transaction will not be considered fraudulent in the absence of a showing that the debtor intended to give the funds received to other than existing creditors. Otherwise stated, it is *not* fraudulent to give the funds to some but not all existing creditors, even though the effect might be to injure or prejudice an existing creditor who was not chosen to receive the debtor's largesse.

*Id.* at 629. Such transfers are called "preferential transfers," and they are not fraudulent. *Id.*

The transfer of the Bald Eagle Road property from Bifani to LaMarca, however, was not a "preferential transfer." There is no evidence that Bifani received above-market compensation for the property and used the income to selectively compensate LaMarca as a creditor, as in *Jacksonville Bulls*. As the Bankruptcy Court found, the undisputed record evidence demonstrates that Bifani received *nothing* in exchange for quitclaiming the Bald Eagle Road property to LaMarca—not even a partial satisfaction of the debt allegedly owed to her, now evidenced by a claim against the

---

[7]Rule 8011(d) requires "emergency" motions to be accompanied "by an affidavit setting forth the nature of the emergency."

[8]There is no dispute that LaMarca is a creditor of Bifani. She has filed a notice of claim in the bankruptcy proceedings.

Bankruptcy Estate.

    c.    <u>Plenary Review of the Merits.</u>

Actual intent is often proved through circumstantial evidence and typically presents a jury question. *Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1312 (M.D. Fla. 2009) (Whittemore, J.); *Nationsbank, N.A. v. Coastal Utilities, Inc.*, 814 So. 2d 1227, 1231 (Fla. 4th DCA 2002) (summary judgment in cases involving actual intent to hinder, delay, or defraud is available "only in extraordinary circumstances"). If, however, the evidence is one-sided, the plaintiff may be entitled to summary judgment on the issue of a fraudulent transfer. *Wiand v. Cloud*, 919 F. Supp. 2d 1319, 1331 (M.D. Fla. 2013). In deciding whether summary judgment is appropriate, a court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).

As discussed, the Bankruptcy Court found four badges of fraud: (1) LaMarca is a "functional insider," (2) Bifani retained possession or control over the property after the transfer, (3) Bifani had been sued or threatened with suit before the transfer was made, and (4) the value of the consideration received by Bifani for the transfers was not reasonably equivalent to the value of the asset transferred. *See* §§ 726.105(2)(a), (2)(b), (2)(d), (2)(h), Fla. Stat. LaMarca argues that the Bankruptcy Court erred in finding all four badges of fraud. For the purposes of this motion, the Bankruptcy Court's Order is reviewed only to determine whether it is "clearly erroneous," with respect to whether LaMarca has shown a substantial likelihood of success on her appeal. *Garcia-Mir*, 781 F.2d at 1453-54.

*i.     "Functional Insider."*

LaMarca contests the Bankruptcy Court's finding that she is a "functional insider" to Bifani. She argues that because she and Bifani are not married or related by blood, they cannot be "insiders" under § 726.102(8), *Florida Statutes*. While LaMarca is correct that section 726.102(8) only mentions family members, "[a] close relationship between a transferor debtor and a transferee is a factor equivalent to a badge of fraud which should be considered in determining fraudulent intent." *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1489 (11th Cir. 1997). *See also Orlando Light Bulb Serv., Inc. v. Laser Lighting & Elec. Supply, Inc.*, 523 So. 2d 740, 744 (Fla. 5th DCA 1988) (close business relationship, although not listed in the statute, is badge of fraud). Accordingly, the Bankruptcy Court's conclusion that LaMarca was a "functional insider," which was indicative of fraud, was not clearly erroneous.[9]

*ii.     Retention of Possession or Control over the Property.*

LaMarca next challenges the Bankruptcy Court's conclusion that Bifani retained control over at least some of the property after it was transferred.[10] She argues that the fact that Bifani lives in the Sarasota home purchased with the proceeds of LaMarca's sale of the Golden Eagle Road property transferred to her by Bifani does not demonstrate possession or control after transfer. LaMarca cites no authority to support her argument. Nor does she point to any facts in the record demonstrating that

---

[9] LaMarca does not contest any of the factual underpinnings of the Bankruptcy Court's conclusion that she was a "functional insider."

[10] The Bankruptcy Court found that Bifani "has–at least in some respects–maintained control of the property after it was transferred" (Dkt. 1-1 at 6). He added, "After all, LaMarca purchased the Sarasota home with the proceeds from the Golden Eagle Road property, and it is undisputed [Bifani] has been living with LaMarca at that house ever since." (*Id.*)

the factual issues supporting the Bankruptcy Court's conclusion were in dispute.[11] The Bankruptcy Court's finding of this badge of fraud was therefore not clearly erroneous. *See Compania de Elaborados de Cafe v. Cardinal Capital Mgmt., Inc.*, 401 F. Supp. 2d 1270, 1281 n.5 (S.D. Fla. 2003) ("It is the non-moving party's obligation to present evidence that precludes the entry of summary judgment . . ., the Court is not required to 'scour the record to determine whether there exists a genuine issue of material fact to preclude summary judgment.'") (quoting *L.S. Heath & Son, Inc. v. AT&T Info. Sys. Inc.*, 9 F.3d 561, 567 (7th Cir. 1993)). *See also Veigle v. United States*, 873 F. Supp. 623, 627 (M.D. Fla. 1994) (living in transferred property rent free is indicative of continued control over fraudulently transferred property)

  iii. *Suit or Threat of Suit Before the Transfer.*

As to the third badge of fraud found by the Bankruptcy Court, LaMarca argues that "unusual circumstances" mitigate in LaMarca's favor. Specifically, she argues that the duration of the Colorado litigation[12] and prior dismissals of the suit (before it was reinstated by the Colorado appellate courts) demonstrate that Bifani could not have been motivated to fraudulently transfer the properties at issue. These arguments are unpersuasive. Again, LaMarca again presents no authority to support her argument that these factors should mitigate against a finding of actual intent. And for

---

[11] LaMarca argues that Bifani was not on the deed when the Sarasota, Florida home was purchased. She fails, however, to establish that such evidence was presented to the Bankruptcy Court. She also fails to provide a citation to the record establishing that fact. In any event, the lack of the debtor's name on the deed does not preclude a finding of this badge of fraud. *See Osley v. Adams*, 268 F. 114, 116 (5th Cir. 1920) (debtor was in actual possession even after deed was transferred); *In re Lee*, 223 B.R. 594, 600 (Bankr. M.D. Fla. 1998) (debtor retained control over property in a manner indicative of fraud even though his name did not appear on the deed).

[12] Bifani was engaged in litigation in Colorado state court with a former business partner, Richard Davis. Originally filed in May 2001, the lawsuit sought damages from Bifani for breach of a mediated settlement agreement. The state court initially dismissed Davis' complaint, but Colorado's appellate courts reversed and remanded the case to the trial court on June 12, 2009. Eventually, a $166,750.15 final judgment was entered against Bifani on December 12, 2011. (*See* Dkt. 1-1 at 3-4).

good reason: section 726.105 contains no such language. Moreover, the Bankruptcy Court did not err in concluding that Bifani's transfers soon after the litigation was reinstated by the Colorado appellate courts was indicative of actual intent, supporting a finding of a badge of fraud.

    iv.    *Not Reasonably Equivalent Value.*

Finally, LaMarca argues that the value of consideration received by Bifani was reasonably equivalent to the property transferred because Bifani owed LaMarca nearly $1 million. As pointed out by the Trustee, the undisputed evidence belies this assertion. The purported $1 million in debt consisted in part of (1) LaMarca paying off the $450,000 mortgage encumbrance on the Ridge Street Property with the proceeds from the sale of that property; (2) the $171,000 LaMarca provided to Bifani when they split the remaining proceeds of the Ridge Street Property; and (3) LaMarca satisfying the $242,700 mortgage encumbrance on the Golden Eagle Road property with the proceeds from the sale of that property (the remainder of which was used to purchase the Sarasota house). LaMarca's attempt to characterize the transactions as payments of debts owed to her is unavailing.

The Bankruptcy Court did find, however, that Bifani owed LaMarca $126,897.93 pursuant to an amended promissory note in favor of LaMarca purportedly memorializing Bifani's obligation to repay amounts LaMarca had previously advanced (Dkt. 1-1 at 3). But none of the property transfers extinguished or reduced that debt. When Bifani filed for bankruptcy, LaMarca asserted a claim against the Estate for the full amount of the promissory note. The Bankruptcy Court's finding that Bifani did not receive reasonably equivalent consideration was not clearly erroneous.

    v.    *Finding of Actual Intent.*

The Bankruptcy Court found actual intent based on these four badges of fraud. That

conclusion was not clearly erroneous. *See In re Seminole Walls & Ceilings Corp.*, 446 B.R. 572, 595 (Bankr. M.D. Fla. 2011) (finding actual intent based on five badges of fraud). Nor was the Bankruptcy Court's conclusion that no genuine issues of material fact remained for determination by a jury clearly erroneous. Nevertheless, LaMarca argues that the grant of summary judgment was erroneous because the Bankruptcy Court did not make a finding of insolvency. That finding was unnecessary, however, under the plain terms of the statute. *See* § 726.105(1)(a), Fla. Stat. When concluding that a debtor transferred property with the actual intent to hinder, delay, or defraud a creditor, insolvency is a sufficient, but not necessary, element of the determination. *See id.*; *Veigle*, 873 F. Supp. at 628 (section 726.105(1)(a) does not require court to make a finding as to insolvency).

In sum, LaMarca has not demonstrated that the Bankruptcy Court's decision was clearly erroneous, and therefore she has failed to show a substantial likelihood of success on the merits of her appeal.

### 2. *No Showing that the Trustee Will Not Suffer Substantial Harm.*

Although the sale of the property will moot that portion of her appeal related to the property,[13] she fails to demonstrate that the Trustee and other creditors will not suffer substantial harm if the property sale is stayed. The Trustee has a buyer and the sale price has been approved by the Bankruptcy Court. A delay in the sale could result in the purchaser walking away from the sale or a breach of the sale contract. The equities therefore weigh in favor of denying a stay.

### IV. CONCLUSION

LaMarca is not entitled to a stay of the sale. She failed to comply with the express

---

[13] *See In re Kahihikolo*, 807 F.2d at 1542 ("This court has repeatedly held that where a debtor fails to obtain a stay pending appeal of an adverse bankruptcy court order and the creditor subsequently conducts a foreclosure sale, the court of appeals is powerless to grant relief, and the appeal must be dismissed as moot.").

requirement of Rule 8005 that a motion for stay be directed to the Bankruptcy Court in the first instance, and failed to adequately demonstrate why the motion was made in the District Court and relief could not be sought in the Bankruptcy Court. Notwithstanding her procedural failings, LaMarca fails to establish a substantial likelihood of success on the merits of her appeal, and likewise fails to show that the Trustee and other creditors will not suffer substantial harm if the sale is stayed.

Accordingly, Appellant's Verified Emergency Motion to Stay Sale of Property (Dkt. 13) is **DENIED**.

**DONE AND ORDERED** this 23rd day of January, 2014.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record